WALTHOUR-FLAKE Co., INC. *v.* BROWN.

5-1331                                      307 S. W. 2d 215

Opinion delivered December 2, 1957.

WILKINS *v.* CARPENTER, TEMPORARY GUARDIAN.

5-1332

Opinion delivered December 2, 1957.

*H. B. Stubblefield,* for appellant.

*Langston & Walker* and *Wayne Foster,* for appellee.

*J. Fred Jones* and *H. B. Stubblefield,* for appellant.

*Langston & Walker* and *Wayne Foster,* for appellee.

CARLETON HARRIS, Chief Justice. On February 5, 1955, Bill O. Brown and wife, Ruby M. Brown, appellees herein, purchased from Mary L. Wilkins, property located at 520 Brown Street in Little Rock. Walthour-Flake Company, Inc., real estate dealers, had advertised the property, and had shown same to the Browns. The Browns made a cash down payment, and Mrs. Wilkins retained a vendor's lien for the balance of the purchase

price; also, the Browns assumed an already existing indebtedness payable to the Pulaski Federal Savings and Loan Company. On February 21, 1956, the Browns filed an action in the Pulaski Circuit Court seeking damages against Mary L. Wilkins, and the Walthour-Flake Company, Inc., (hereinafter called Walthour); alleging that they had been induced to purchase the property through false and fraudulent representations on the part of the defendants.[1] Mary Wilkins filed a counterclaim in excess of $4,000, the balance of the purchase price of said property, and moved to transfer the cause to Chancery Court. The motion was denied. In filing the suit, appellees elected to affirm the sale of the property and seek to recover their damages at law. On October 18, 1956, after the case had been submitted to the jury, prior to the returning of a verdict, appellees took a non-suit. Thereafter, the unusual events which occasioned this litigation occurred as follows. On October 19, 1956, the day following the taking of the non-suit, Mrs. Wilkins gave Walthour an assignment of $360 of the debt due her from the Browns, and on the same date, both filed their suit in the Pulaski Chancery Court, First Division, against the Browns,[2] seeking to foreclose the lien which had been retained. The cross complaint in the Circuit Court was dismissed shortly after the Chancery suit was filed. On October 26, the Pulaski Probate Court, Second Division, appointed one Charles L. Carpenter, an attorney of North Little Rock, as temporary guardian[3] of the estate of Mrs. Wilkins, and directed that such temporary guardian intervene in the action, previously referred to, which had been filed in the Pulaski Chancery Court. This order was granted on the basis of the af-

[1] The complaint alleged that representations had been made that the house was in good condition, was wind and water tight, was solid and habitable, and fit for occupancy, and that the house was purchased because of reliance upon these material representations; that on April 16, 1955, the entire north wall of the house, constructed of rock, fell out into the yard, taking with it all the kitchen wall cabinets and sink, thus leaving the entire house exposed to the out of doors.

[2] Pulaski Federal Savings & Loan Association was also made a party since it had a lien on the property securing a debt of approximately $1,036.56 in order that it might "assert, protect, and have adjudicated in this action such claims and rights as it may have."

[3] The letters of temporary guardianship were to expire January 26, 1957.

fidavit of Dr. Anderson Nettleship, which stated that the doctor had viewed Mrs. Wilkins at the Meadowlane Nursing Home; after setting out the results of his examination, he concluded by finding her to be mentally incompetent. The petition seeking the appointment of Carpenter as temporary guardian was signed by Ruby M. Brown, defendant in the Chancery suit, and one of the appellees herein, averring that petitioner

"* * * has funds in his hands payable to said Mary L. Wilkins upon said notes, the same being accrued past due payments since February 13, 1956, and that said amount is sufficient to cover the unratified and voidable assignment made by the said Mary L. Wilkins, incompetent, to a third person, but that said Mary L. Wilkins and the Walthour-Flake Company, the latter being the aforementioned assignee, have filed an action in the Chancery Court of Pulaski County, in case No. 106201, to foreclose the vendor's lien securing said notes, that a Temporary Guardian should be appointed by this court for the purpose of intervening in said action, disaffirming said assignment, and tendering any consideration actually received by said Mary L. Wilkins from Walthour-Flake Company, Inc., without prejudice to the said Temporary Guardian or his ward from proceeding in said foreclosure action.

Petitioner states that otherwise he might be subjected to double liability by reason of the possibility of subsequent avoidance or disaffirmance of said assignment by said incompetent. * * *"

The petition reflected that Mrs. Wilkins had two daughters living in Little Rock, listed them by name, and alleged that said daughters had been handling the affairs of the incompetent "* * * as if they were their own, having attempted to sell or assign interests in the note, hereinabove referred to, to third parties, knowing full well that said attempted sales or assignments were unauthorized and subject to repudiation by the said incompetent, and, for this reason, should not be permitted to serve as Guardian herein. * * *" The order was granted by the court without notice to either of these

daughters, and without notice to Mrs. Wilkins' attorney, who had filed the suit for her in the Chancery Court. On November 23, notice of appeal to the Supreme Court was given by Mrs. Wilkins and her daughters, and a petition was filed to set aside such appointment. On January 9, 1957, this petition was denied, but no appeal was taken therefrom. Accordingly, the only action of the Probate Court under question is the propriety of the original order.

Appellees obtained three extensions of time for filing an answer in the Chancery case[4], but the litigation terminated before any such answer was filed. The temporary guardian, on October 29, filed an intervention in the case, in which, as such temporary guardian of Mary Wilkins, he disaffirmed the assignment and transfer of the $360 of the indebtedness which she had made to Walthour, and further, tendered said amount of money into the registry of the court to be paid to Walthour. The guardian obtained such amount from the defendants, appellees herein. On January 24, 1957, the following pleadings were filed: the Browns filed motion praying that Walthour be dismissed as party plaintiff, as per the prayer of the temporary guardian; Mrs. Wilkins, through her attorney, filed motion setting up that the Browns had agreed to pay the delinquent installments on the note and mortgage and to resume future payments, and accordingly, asked that she be permitted to dismiss her complaint; Walthour filed an amendment setting forth the entire background of the case, and asked that the court require the Browns and Mrs. Wilkins to make a full disclosure of "* * * any and all agreements and considerations in connection with the announced intention of said Mary L. Wilkins to dismiss, as to her, the cause of action set forth in her complaint; that the rights, status and liabilities of the parties to this action in connection with the matters set forth hereinbefore be ascertained, adjudged and declared by this Court; * * *." The court entered its decree finding "* * * that all parties hereto except the plaintiff,

[4] Order entered October 29, 1956, extended time to January 1, 1957. Order entered December 19, 1956, extended time to January 15, 1957. Order entered January 11, 1957, extended time to January 30, 1957.

Walthour-Flake Co., Inc., are in agreement in desiring a dismissal of this cause; that there has been deposited in the Registry of this Court sufficient funds to reimburse said Walthour-Flake Company, Inc., for all claims made by it in this cause; that if this cause were prosecuted to final judgment herein the relief sought by said Walthour-Flake Company, Inc., would be no greater than that already available to it; and that the interests of said Walthour-Flake Company, Inc., are not prejudiced by a dismissal of their complaint herein. * * * '', and dismissed same as to all parties, further directing the clerk of the court to pay to Walthour the sum of $379.60 (including costs) as full satisfaction of its claims.

From such decree, Walthour brings this appeal. Both Mary Wilkins, her daughters, and Walthour appeal from the order of the Probate Court appointing the temporary guardian.

We will first dispose of the appeal from the Probate Court, though in doing so, it may be necessary to discuss some of the evidence adduced at the Chancery hearing. Section 57-620, Ark. Stats. (1947) Anno., provides for the appointment of temporary guardians as follows:

"If the court finds that the welfare of an incompetent requires the immediate appointment of a guardian of his person or of his estate, or of both, it may, with or without notice, appoint a temporary guardian for the incompetent for a specified period, which period including all extensions thereof, shall not exceed ninety (90) days, and remove or discharge him or terminate his guardianship. * * * The appointment may be to perform duties respecting specific property or to perform particular acts, as stated in the order of appointment. * * *''

This provision is mainly designed to take care of emergency appointments. Under the code, a minimum of three days notice must be given before a regular guardian can be appointed, and instances may well arise where such a delay would cause irreparable damage to

the estate of an incompetent. Here, no such emergency seems to have existed. According to the petition:

"* * * a Temporary Guardian should be appointed by this court for the purpose of intervening in said action, disaffirming said assignment, and tendering any consideration actually received by said Mary L. Wilkins from Walthour-Flake Company, Inc., without prejudice to the said Temporary Guardian or his ward from proceeding in said foreclosure action. * * *"

The Chancery action was instituted on October 19th, and accordingly, there remained thirteen days before appellees were required to answer; the temporary guardian did not file his intervention until October 29th (three days after his appointment), so we fail to see the urgent necessity for immediate appointment of a guardian. To have sought the appointment of a permanent guardian would not have prejudiced the rights of any individual. In such event, it would have been necessary that at least one of the daughters be notified of such petition.[5] Under the circumstances, we are of the opinion that such notice should have been given. To declare one incompetent and appoint a guardian, is a step that should only be taken after considered thought, and, except for an emergency, only after giving relatives or others closely connected with the alleged incompetent an opportunity to be heard. As stated, this was not done in the instant cause, nor was the attorney, who had instituted the foreclosure action for Mrs. Wilkins, notified. Here, the temporary guardian (who had never seen the incompetent), admittedly agreed to serve at the suggestion of appellees or their counsel, who were adversaries of Mrs. Wilkins in the Chancery suit, and had also been adversaries in the damage suit before the Circuit Court. Appellees call attention to Section 57-628 as authorizing their request for temporary guardian. That section has no application to the facts of this litigation. The purpose of that section is to authorize a guardian for an incompetent to perform contracts that the incompetent has entered into, and would be required to perform, except for the incompetency. In this cause, Mrs.

---

[5] Section 57-611, Subsection B (5).

Wilkins had not refused to perform any contract; in fact, her action was brought because of the alleged failure of appellees to perform the contract, *i. e.,* their failure to make the payments as required.

One might ask the question, "Why are guardians appointed?" The answer is given in the first sentence of Section 57-620, heretofore quoted. "If the court finds that the *welfare of an incompetent*[6] requires the immediate appointment of a guardian * * *." The instant appointment does not meet the test of that definition. The order was obtained primarily for the benefit of the Browns, appellees herein. According to the testimony of the temporary guardian in the Chancery hearing, he had not seen Mrs. Wilkins before being designated, had not talked with either of the daughters, nor with her attorney prior to being appointed; had made no effort to ascertain whether her bills at the rest home had been paid, nor to ascertain her needs as to clothing and medicine. In fact, the only act performed by the temporary guardian, was to file the intervention in the Chancery case (which was prepared by appellees' attorneys) disaffirming the assignment from Walthour, and tendering the $360 furnished by appellees. Actually, we cannot see that Mrs. Wilkins' estate or interest had suffered by the assignment to Walthour. The claim (through the note) for $360 that she held against the Browns, was exchanged for that amount of cash money. She suffered no loss; rather, she received money to apply on current expenses, which she would not have otherwise received, since the Browns were making no payments, and the testimony reflects the Brown indebtedness to be her sole asset. From her point of view, we see no reason why a disaffirmance of the assignment would be of any benefit. For the reasons herein set out, the action of the Probate Court in appointing the temporary guardian is reversed, and the cause is remanded with directions to cancel and set aside such order.

Perhaps it might be well to say here that we do not consider there is any reflection of wrong doing, or

---

[6] Emphasis supplied.

taint, upon the actions of any of the parties hereto on either side . . . litigants, counsel, or guardian. Counsel for the Browns and the temporary guardian were apparently very careful not to take any action that might prejudice the right of Mrs. Wilkins to proceed with the collection of the indebtedness due by the Browns. Seemingly, this whole complicated situation arose because of the desire of appellees to bring a further suit for damages against Walthour in Circuit Court, where same could be heard by a jury, and a contrary desire, equally strong, by Walthour, to have the matter of damages heard in the Chancery Court. This "jockeying for position" on the part of the litigants is occasioned, of course, by our law relative to counterclaims, found in paragraph 4, Section 27-1121, and Section 27-1123, Ark. Stats. (1947) Annotated. Appellants state that the interest in the Brown indebtedness was purchased because Mrs. Wilkins needed money to pay her bills; however, the determined effort made to keep the litigation "alive" in Chancery Court, as well as the other circumstances in the cause, convinces us that the assignment was obtained in order to force appellees, while defending against the foreclosure, to assert any claim that they might have against either plaintiff in that court. On the other hand, appellees did not want to file an answer in Chancery Court to the foreclosure action, because they were fearful that their claim against Walthour would have to be asserted in that forum, thus depriving them of a trial by jury. The reasons of both are valid. Walthour's attainment of the assignment was entirely legal, while most people with damage suits probably prefer a trial before a jury. Having thus stated the reasoning behind the actions of the parties, we proceed to a discussion of the Chancery case.

Here, it will be remembered that Mrs. Wilkins dismissed the foreclosure complaint, as to her interest, because of the agreement of appellees to catch up their delinquencies, and make the future payments. The temporary guardian tendered the $360, together with costs, to Walthour, and the court dismissed the action, finding that "*  *  * if this cause were prosecuted to final

judgment herein the relief sought by said Walthour-Flake Co., Inc., would be no greater than that available to it. * * *"

We have already held that the appointment of the temporary guardian was invalid. Mr. Carpenter, not being an agent of, or representing Mrs. Wilkins, was therefore a stranger to the transaction, and was without authority to make such a tender. In *Corpus Juris Secundum,* Vol. 86, page 576, we find:

"While it is not necessary that the tender be made in person by the debtor, a tender to be valid must be made by him or someone representing him. As a general rule a tender by a mere stranger is invalid, although it has been held that a person who has an interest in the consequences of a tender may make an effectual tender. * * *"

Mr. Carpenter, of course, as an individual, had no interest in the consequences of the tender. Likewise, in American Jurisprudence, Vol. 52, page 224:

"The courts generally take the position that a mere stranger to the obligation cannot make an effectual tender of payment of such obligation. * * *"

We accordingly conclude that the court erred in dismissing Walthour's cause, and directing the clerk to pay over to Walthour the sum of $379.60 in full satisfaction of its claims. We make no finding as to the propriety, relevance, or validity of the amended complaint, since the Chancellor made no specific findings with regard thereto.

The decree of the Chancery Court is reversed and the cause remanded, with directions to proceed in a manner not inconsistent with this Opinion.