**SIRTEX OIL INDUSTRIES, INC.,
Petitioner,**

v.

**Thelma ERIGAN et al., Respondents.**

No. A–11088.

Supreme Court of Texas.

June 1, 1966.

Pepos S. Dounson, San Antonio, for petitioner.

John A. Waller, Jr., and Ralph Graham, Corpus Christi, for respondents.

**NORVELL, Justice.**

The respondents, Thelma Erigan, a widow, Armeen Norah Erigan Stone and husband, Charles C. Stone, brought suit against Sirtex Oil Industries, Inc. alleging that they were the owners of the West one-third of Lot No. 40 of the H. B. Sheppard Farm Lots subdivision of lands in Nueces County, Texas, and entitled to possession thereof. They alleged that N. Erigan and wife, Myrtle Erigan,[1] had executed an oil and gas mining lease covering said West one-third of Lot No. 40 to Shasta Drilling Company on December 22, 1932, and thereafter on June 17, 1949, N. Erigan and Armeen Erigan executed a surface lease covering the premises to Renwar Oil Corporation. The legal controversy involved in this suit relates to this surface lease. The Erigan plaintiffs conceded that the oil and gas mining lease is in force and effect, but alleged that the surface lease had terminated and that Sirtex was in effect a trespasser upon plaintiffs' lands. The trial court directed a verdict for Sirtex. The Court of Civil Appeals reversed this judgment and remanded the case for another trial. 393 S.W.2d 836. For the reasons hereinafter set out, we affirm the judgment of the Court of Civil Appeals.

In 1949, Renwar Oil Corporation acquired the ownership of the Shasta Drilling Company lease from which production had been obtained. Renwar desired to make a more extensive use of the surface of the land than was permitted by the oil and gas lease for the purpose of maintaining field offices, warehouses, pipe racks and supply yards for the storing of materials to be used on the Erigan, the Quiroz and perhaps other leases. Renwar thereupon secured the surface lease above mentioned. On August 6, 1962, petitioner Sirtex Oil Industries, Inc. secured an assignment of the Erigan oil and gas mining lease from Tenneco Oil Company, the successor in interest

1. N. Erigan was deceased at the time of the trial. Thelma Erigan is his widow. Mrs. Armeen Norah Erigan Stone is a daughter of N. Erigan by his marriage with his first wife, Myrtle Erigan.

of Renwar Oil Corporation. This assignment included a conveyance of all the assignor's interest in all leasehold equipment and personal property situated on and belonging to the operation of the leasehold premises. Edgar P. Bates, the executive president of Sirtex, testified that on the date of the assignment from Tenneco, Sirtex took over "all operations that were with the Erigan property". It appears, however, that Sirtex was under the impression that the oil and gas lease covered Tenneco's surface operations on the Erigan tract as Bates did not know of the 1949 surface lease until the receipt of a letter from the Erigan attorney dated January 22, 1963, in which it was stated that Sirtex had no right to use such property for a supply yard, a salt water disposal pit or as a location for compressor facilities. In effect, the position taken by the Erigan attorney was that the surface lease had expired and was no longer in existence.

The Erigan-Renwar surface lease provided that:

"It is expressly agreed that the term of this lease shall run concurrently and be coextensive with the life of said oil and gas mining lease, and this surface lease shall be deemed to have terminated when such oil and gas lease terminates under its own terms and limitations, unless Lessee herein elects to terminate this surface lease at an earlier date, which it is granted the express right to do. This lease is effective as of and from January 1, 1947. Contemporaneously with the execution of this lease Lessee has paid to us, the undersigned Lessors, the sum of $1,800.00 in cash, the receipt of which is hereby acknowledged, such payment in full consideration for this surface lease for the years of 1947, 1948 and 1949, the annual rental for this surface lease being the sum of $600.00 per year. Likewise, and on or before January 1, 1950, and on or before January 1st of each succeeding year which Lessee desires to keep this surface lease in full force and effect, Lessee shall pay to Lessors, jointly, the sum of $600.00 which will be full consideration for this lease for the ensuing year. * * *"

The rent due under the surface lease was paid for the years 1949 to 1962, inclusive, but the rent for 1963 was not tendered on or before January 1 of that year. After January 22, a further tender would not have been necessary because of the Erigan position that the lease had expired.

As we see it, there was no "election" in this case. The lease states that the term thereof shall be coextensive with the life of the oil and gas mining lease, "unless Lessee herein elects to terminate this surface lease at an earlier date, which it is granted the express right to do". This clause, except for an incidental reference to an election to abandon the premises in connection with the rental clause, is the only provision relating to an election. In the lease, the term "elect" is obviously used in its common ordinary sense. It is a synonym of "choose". Webster's Third New International Dictionary. See also, Funk and Wagnalls, Standard Handbook of Synonyms, p. 121. The term "election" carries with it the connotation of a voluntary choice between two available courses.

The lease does not say how the election to terminate shall be exercised. It does not say that the failure to pay rent promptly on or before January 1, shall be equivalent to an election to terminate. One would suppose from the brief wording of the lease contract that the election or choice to terminate the lease would be exercised by a simple notice to the lessor. No such notice was ever given by Sirtex, but on the contrary, if "election" be the same as a voluntary choice, then the evidence is conclusive that Sirtex never elected or chose to move its yards, pipe racks and other equipment and supplies off the Erigan property.

We do not construe the lease as providing for a series of yearly options but as having a term of definite duration. The lease states that "the term of this lease shall run concurrently and be coextensive with the life of said (Shasta) oil and gas mining lease. . . . unless Lessee herein elects to terminate this surface lease at an earlier date, which he is granted the express right to do". Sirtex did not elect or choose to terminate the lease, so if it is to be terminated at some date prior to expiration of the Shasta oil and gas mining lease, some clause other than that providing for an election must serve as a basis therefor. This brings us to a consideration of the rental clause contained in the lease which recites the payment of rentals for the years 1947, 1948 and 1949 and continues:

"Likewise, and on or before January 1, 1950, and on or before January 1st. of each succeeding year which Lessee desires to keep this surface lease in full force and effect, Lessee shall pay to Lessors, jointly the sum of $600.00 which will be full consideration for this lease for the ensuing year, but in the event Lessee should make one of such annual rental payments and thereafter elect to abandon the premises during the year for which it has paid rental, nevertheless Lessors shall not be obligated to make restitution of any part of such unearned annual rental."

■ The Erigan respondents urge that the provision for the payment of rent on or before January 1 should be construed as a condition. They rely primarily upon the phrase, "each succeeding year which Lessee desires to keep the surface lease in full force and effect". The issue thus presented is close. In our opinion, however, this phrase taken in connection with the balance of the instrument providing for a term of years limited only by the time of expiration of the Shasta oil and gas lease, does not require that a condition or limitation be acknowledged. In all probability, it was placed therein in recognition of the lessee's

undoubted right to terminate the lease by its voluntary choice and election. No voluntary choice to terminate the lease was exercised. The rental clause may well be construed as a covenant to pay rent and nothing more.

Because of their harshness in operation, conditions are not favorites of the law. In the early case of Johnson v. Gurley, 52 Tex. 222 (1879), this Court discussed the nature of covenants, conditions and conditional limitations and announced the rule:

"In case of doubt as to the true construction of a clause in a lease, it should be held to be a covenant, and not a condition or limitation, as the law does not favor forfeitures."

The same view was expressed in Henshaw v. Texas Natural Resources Foundation, 147 Tex. 436, 216 S.W.2d 566 (1949), wherein it was said:

"Since forfeitures are not favored, courts are inclined to construe the provisions in a contract as covenants rather than as conditions. If the terms of a contract are fairly susceptible of an interpretation which will prevent a forfeiture, they will be so construed."

In Hearne v. Bradshaw, 158 Tex. 453, 312 S.W.2d 948 (1958), this Court said:

"Conditions subsequent are not favored by the courts, and the promise or obligation of the grantee will be construed as a covenant unless an intention to create a conditional estate is clearly and unequivocally revealed by the language of the instrument. In cases where the intention is doubtful, the stipulation is treated as a covenant rather than a condition subsequent with the right to defeat the conveyance."

See also, 51 C.J.S. Landlord and Tenant, § 104, p. 680; 32 Am.Jur. 143, Landlord and Tenant, § 141, 13 Tex.Jur.2d 340, Contracts § 158. Annotation 70 A.L.R. 1218. Cf. Knight v. Chicago Corporation, 144 Tex. 98,

188 S.W.2d 564 (1945), Fox v. Thoreson, 398 S.W.2d 88 (Tex.Sup.1966).

It further seems established that a lease will be most strongly construed against the lessor.[2] Pickrell v. Buckler, 293 S.W. 667 (Tex.Civ.App.1927, wr. ref., 116 Tex. 567, 296 S.W. 1062), Walling v. Christie & Hobley, Inc., 54 S.W.2d 186 (Tex.Civ.App.1932, no writ hist.), Richker v. Georgandis, 323 S.W.2d 90 (Tex.Civ.App.1959, ref. n. r. e.).

The facts of the case well illustrate why the law abhors a forfeiture. In the fall of 1962, Sirtex came into an operation that had been in continuous existence for some fourteen years. It may have been remiss in not knowing that the installations on the Erigan tract were in excess of those which were permitted by the ordinary oil and gas lease and in not making inquiry of Tenneco as to the extensive use of the surface of the Erigan tract. To overlook something, however, does not call for punitive treatment and yet we have a lessee in effect ejected from lands upon which it has valuable buildings and installations because of non-payment of rent that it did not know was due and owing and which at all times since notification has been ready, willing and able to pay. An operation of many years standing would have to be rebuilt at heavy expense and inconvenience to the lessee. Under such conditions, it seems that equity should afford relief even though a condition rather than a covenant be involved. In Jones v. Gibbs, 133 Tex. 627, 130 S.W.2d 265, 131 S.W.2d 957 (1939), this Court quoted with approval from F. B. Fountain Co. v. Stein, 97 Conn. 619, 118 A. 47, 27 A.L.R. 976, as follows:

' "In cases of mere neglect in fulfilling a condition precedent of a lease, which do not fall within accident or mistake, equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease." '

The Court of Civil Appeals sustained respondents' contention that the surface lease had terminated of its own force and hence it was unnecessary for it to pass upon the remaining points contained in respondents' brief in that Court. We do not agree with the Court of Civil Appeal's construction of the lease and it thereupon becomes our duty to examine the remaining points asserted by respondents in their brief in the Court of Civil Appeals and ascertain whether any of them will support the judgment rendered by the appellate court.

In our opinion, such points raise a fact issue as to the rights of Sirtex under the Erigan-Renwar surface lease. The judgment of the trial court was based upon a tender by Sirtex of $1,800.00 for the rent due for the years 1963, 1964 and 1965. The money was deposited in the registry of the court to be turned over to respondents upon request. We have here a landlord-tenant situation. Sirtex claims to be the tenant of the Erigans as an assignee of Tenneco. Undoubtedly the lease was assignable and considering the fact that Sirtex was in possession of the various surface installations erected by Renwar and Tenneco, the execution of a written instrument would not be essential to the right to make a tender, provided Sirtex had an equitable right to require that the surface lease be assigned to it. It cannot be said that Sirtex was entitled to make a tender of rent as a matter of law. No tender by Tenneco was shown and if it were the only entity entitled to make such tender, an abandonment by it of the surface lease could be inferred. The legal relationship between Tenneco and Sirtex as to the surface lease is left indefinite and uncertain by the testimony of the Sirtex president. He seems to have originally

2. This rule does not apply to oil and gas leases. McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 304 S.W.2d 267 (1957).

believed that the extensive surface operations of Tenneco which he says his company acquired, were conducted under the surface rights granted in the Shasta oil and gas mining lease. As heretofore mentioned, Edgar T. Bates testified that Sirtex "had purchased the oil, gas and mineral lease, all equipment, personal property, and all operations that were with the (Erigan) property. * * *". He claimed that "Sirtex (was) entitled to the surface lease because of the oil and gas operation" which was quite extensive, embracing eight miles of pipelines on the Erigan and adjoining Quiroz leases. However, it is evident from his testimony that at the time of the assignment of the Shasta oil and gas mining lease (August 6, 1962) by Tenneco to Sirtex, he did not know of the Erigan-Renwar surface lease and did not gain knowledge of such lease until January 22, 1963 when he received a letter from an attorney representing the respondents. He also stated that Tenneco had refused to execute and deliver a written assignment of the Erigan-Renwar surface lease.[3]

We need not further review the evidence. It does not show as a matter of law that Sirtex was entitled to make the tender upon which the trial court's judgment was based. Cf. Walthour-Flake Co. v. Brown, 228 Ark. 307, 307 S.W.2d 215 (1957), Annotation, 20 L.Ed. 547.

Accordingly, the judgment of the Court of Civil Appeals must be affirmed and the cause remanded for another trial. Upon such trial, the court will be governed by our holdings herein set forth.

The judgment of the Court of Civil Appeals is affirmed.

---

3. Sirtex attached to its brief filed in the Court of Civil Appeals a photostatic copy of a written instrument assigning the Erigan-Renwar surface lease from Tenneco to Sirtex. This assignment appears to have been executed by Roy Randerson, Jr., purporting to act as agent and attorney in fact for Tenneco Oil Company. It is recited that the assignment is made

---

CONCURRING OPINION

STEAKLEY, Justice.

I agree with the affirmance of the reversal and remand judgment of the Court of Civil Appeals. But I am in further agreement with the Court of Civil Appeals in its construction of the surface lease contract. In my opinion the surface lease is not subject to doubt calling for or supportive of the construction reached by the majority here. See Jones v. Gibbs, 133 Tex. 627, 130 S.W. 2d 265, 131 S.W.2d 957. Notwithstanding the disfavor with which conditions may be viewed, one was expressly written into the surface lease and should be acknowledged and enforced.

The problem here is somewhat unique in that the surface lease bears direct relationship to the oil and gas lease and was designed to afford greater surface rights than those flowing from the oil and gas lease. It was quite clearly provided, and for obvious reasons, that the surface lease would concur with the oil and gas lease only so long as the surface lessee desired to and did comply with the stated condition under which, and only under which, the surface lease could be maintained "in full force and effect," namely, by the payment of the "full consideration for which this lease for the ensuing year * * * on or before January 1st of each succeeding year. * * *" This was not done on or before January 1, 1963, whereupon the surface lease terminated under its own terms. It is something else, and beside the point to the foregoing, that the surface lessee was also expressly

---

without warranty of title, either expressed or implied, and bears the date of March 3, 1965. This instrument was not introduced in evidence upon the trial of the cause. In fact, it was apparently executed after judgment was rendered by the trial court on February 19, 1963. It cannot be considered for any purpose on this appeal.

granted the right to terminate the surface lease before the termination of the oil and gas lease should he elect to do so.

CALVERT, C. J., and POPE, J., join in this opinion.