# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20438

United States Court of Appeals
Fifth Circuit

**FILED**

October 8, 2018

Lyle W. Cayce
Clerk

KIEWIT OFFSHORE SERVICES, LIMITED,

Plaintiff - Appellee

v.

DRESSER-RAND GLOBAL SERVICES, INCORPORATED,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-1299

Before HIGGINBOTHAM, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

This case involves a dispute between two contracting parties about whether one must pay the other approximately $10 million. Dresser-Rand Global Services, Inc. (Dresser-Rand) contends that Kiewit Offshore Services, Ltd. (Kiewit) changed the contract's scope of work without complying with the contract's required procedures and is therefore not entitled to payment from Dresser-Rand for work reflected in several invoices. The district court granted

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20438

summary judgment in favor of Kiewit.  Dresser-Rand appealed.  Because we conclude the district court correctly held that there were no genuine fact issues and Kiewit was entitled judgment as a matter of law, we AFFIRM.

**I**

In 2012, Dresser-Rand solicited a bid from Kiewit to design, engineer, and fabricate two large litoral compression modules, ultimately for use by Dresser-Rand's customer, PEMEX Exploration and Production (PEMEX), on an existing offshore oil-drilling platform in the Gulf of Mexico.[1]  Dresser-Rand accepted Kiewit's bid and, in 2013, the parties entered into a contract.  Kiewit subcontracted separately with Excel Engineering (Excel) to assist with engineering the modules.  The completed modules were delivered to Dresser-Rand in 2014, and Dresser-Rand accepted them.

Several provisions of Dresser-Rand's contract with Kiewit are relevant on appeal.  Appendix E to the contract set forth the contract's "scope of work" for equipment and services.  Article 303 required the parties to propose change orders for any changes to the contract's scope of work.  Appendix A set forth the completion date, contract price, payment schedule, and notes regarding reimbursement procedures.  Article 701 of Appendix A set forth a total "target estimate" of the contract price before any change orders of $27,271,336.  The same article also set forth documentation and timekeeping requirements for work compensated by reimbursable rates.  The contract contained no maximum or "not-to-exceed" price.

Kiewit submitted eight invoices to Dresser-Rand, reflecting a total price of $42,792,860.  Dresser-Rand paid the first four invoices, which totaled $33,265,588, but refused to pay the remaining four invoices, DR-04b, 05, 06, and 07, totaling $9,486,588.  The parties agree that Kiewit did not submit any

---

[1] Kiewit was not a party to the agreement between Dresser-Rand and PEMEX.

No. 17-20438

change orders for work reflected in Invoices DR-04b, 05, and 06, which are the subject of this appeal.[2]

In May 2015, Kiewit filed suit against Dresser-Rand, alleging breach of contract, promissory estoppel, and unjust enrichment and seeking compensatory damages in the amount listed in the remaining four invoices. Dresser-Rand counter-claimed, alleging breach of contract and seeking to recover over $2.3 million in damages, including liquidated damages assessed to Dresser-Rand by PEMEX for late delivery of the modules. The parties cross-moved for summary judgment, and the district court granted Kiewit's motion, dismissing all of Dresser-Rand's counterclaims and awarding Kiewit damages for nonpayment of Invoices DR-04b, 05, and 06.

## II

We review a district court's grant of summary judgment de novo. *Howell v. Town of Ball*, 827 F.3d 515, 521 (5th Cir. 2016). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The function of the judge at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A genuine dispute of material fact exists when, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. We may affirm a district court's grant of summary judgment on any ground supported by the record and raised below. *See Windham v. Harris Cty.*, 875 F.3d 229, 234 (5th Cir. 2017).

---

[2] Invoice DR-07, totaling $41,031, was the subject of a separate summary judgment motion. Dresser-Rand does not appeal the district court's order as to DR-07.

No. 17-20438

A party asserting a genuine factual dispute must support that "assertion by citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (internal citations omitted). Conclusional allegations are insufficient to defeat a motion for summary judgment. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 513 (5th Cir. 1999). Nor can the non-moving party satisfy its burden by establishing "some metaphysical doubt as to the material facts," or by putting forth "unsubstantiated assertions" or a "scintilla" of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). In deciding issues of contractual interpretation, we "apply the contract law of the particular state that governs the agreement," which the parties here agree is Texas. *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 419 (5th Cir. 2014) (quoting *Wash. Mut. Fin. Grp., LLC v. Bailey,* 364 F.3d 260, 264 (5th Cir. 2004)).

## III

The district court determined that "it is undisputed that Kiewit did not submit [c]hange [o]rders for the work reflected in Invoices DR-04B, 05, and 06 and that the invoices accurately reflect the costs Kiewit incurred." Accordingly, the court proceeded to consider a single question: whether the costs reflected in the invoices constituted a change in the contract's "scope of work" such that Kiewit was required to submit a change order pursuant to Article 303 of the contract. Finding that Dresser-Rand's summary judgment evidence was insufficient to establish any changes to the contract's scope of work, the court denied Dresser-Rand's motion for summary judgment with

4

No. 17-20438

respect to the invoices, and granted Kiewit's corresponding motion for summary judgment.

On appeal, Dresser-Rand raises three arguments that the district court erred by granting summary judgment in favor of Kiewit. First, that it raised a genuine issue of material fact that Kiewit changed the contract's scope of work by building modules with three decks instead of two. Second, that Kiewit did not comply with the contract's condition precedent to repayment. Third, that Kiewit submitted insufficient, conclusory summaries of the work underlying the invoices, preventing the district court from determining how Kiewit derived its damages claim. We address each of these arguments in turn.

**A**

Dresser-Rand first contends that the district court improperly disregarded summary judgment evidence that it claims raised a genuine fact issue as to whether Kiewit changed the contract's scope of work without complying with Article 303. Dresser-Rand specifically argues that Kiewit created two non-identical, three-deck modules, even though the contract's scope-of-work provision specified that the two modules should be identical and have two decks. In response, Kiewit argues that no change orders were necessary because the increased costs in the invoices were reflective of changes within the original scope of work resulting from substantial design evolution, and therefore did not constitute changes to the contract's overall scope. According to Kiewit, the contract's scope, as defined in Appendix E, was a "black box," granting it broad discretion to design and engineer the modules, so long as it incorporated certain performance requirements provided by PEMEX. For the following reasons, we find Kiewit's arguments persuasive and affirm the district court's judgment.

It is indisputable that Kiewit ultimately furnished modules with three decks. However, on the plain language of the contract, it is ambiguous whether

this constituted a change to the contract's scope of work.[3]  In construing a written contract, Texas courts first attempt to determine the parties' true intentions as expressed in the instrument.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).  Texas courts consider a contract in its entirety, harmonizing and giving effect to all provisions and rendering none meaningless.  *Id.*  Extraneous evidence may be considered to determine the true meaning of the contract only if the contract is ambiguous.  *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450–51 (Tex. 2008) (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)).  "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered."  *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).  If a contract, on its face, can be given a "definite certain legal meaning," courts may not look to extrinsic evidence to render it ambiguous.  *EOG Res., Inc. v. Killam Oil Co.*, 239 S.W.3d 293, 298 (Tex. App. 2007).  Ambiguity exists where "the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction." *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589.

Article 303 of the contract states that Kiewit must submit a change order to Dresser-Rand for any change to the contract's scope of work:

> At any time during the progress of the Work, either Company or Contractor may propose Change Orders. . . . Contractor shall be entitled to a Change Order making necessary and reasonable adjustments to the Contract Price . . . solely and to the extent reasonably necessary resulting from impacts to the Work resulting

---

[3] Neither party claims on appeal that the contract is ambiguous; indeed, both parties consistently maintained that it was unambiguous below.  However, "even when both parties agree that their contract is unambiguous and merely disagree as to its unambiguous meaning, [we] may independently conclude that the contract is ambiguous."  14 TEX. JUR. 3D CONTRACTS § 229 (2018) (citing *Plotkin v. Joekel*, 304 S.W.3d 455 (Tex. App. 2009)).

from events beyond Contractor's control including without limitation: Changes in the Scope of Work.

Additionally, Dresser-Rand is correct that Appendix E, setting forth the contract's scope of work, refers generally to a "2 deck module."[4]  However, Appendix E also states that "the module(s) layout will be set by control parameters," including allowable space, safety and allowances for exit access, construction, maintenance, operation, weight restrictions, and third-party certification.  Additionally, the scope-of-work provision specifies that "[t]he ultimate goal of the module layout is to minimize space and weight requirements without compromising on safety, constructability, maintainability and operability."  Viewed in its entirety, Appendix E's plain language could reasonably support two different readings: the first, that Kiewit was required to build modules with two decks; the second, that the layout of the modules, including the number of decks per module, was flexible and intended ultimately to yield to other considerations if necessary.  *See Valence Operating Co.*, 164 S.W.3d at 662.  Thus, the plain language of the contract does not definitively answer whether, by designing and building modules with three decks instead of two, Kiewit changed the contract's scope of work and was therefore required to comply with Article 303's change-order requirement.

The circumstances existing at the time the parties entered into the contract do not clarify this ambiguity.  *See Columbia Gas Transmission Corp.*, 940 S.W.2d at 589; *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015) (considering "the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give context to the parties' transaction" to determine whether a contract is ambiguous) (quoting

---

[4] We have not found similar support within Appendix E for Dresser-Rand's contention that Kiewit changed the contract's scope of work by building modules that were not identical.

*Americo Life, Inc. v. Myer,* 440 S.W.3d 18, 22 (Tex. 2014)). Stephen Shupak, Commercial Support Director for Dresser-Rand, testified that PEMEX, Dresser-Rand's customer that would ultimately use the modules, provided a "performance spec" focused on module output and that the contract consequently left the design of the modules to Kiewit. Dresser-Rand's General Projects Manager, Daniel Simpson, similarly stated that Kiewit had discretion to design the modules if they complied with end-game performance requirements and "the basic data sheet spec" provided by PEMEX, detailing the "material to use on the internals of the compressors, the pressures you're dealing with, that kind of thing." Likewise, Jerry Walker, Dresser-Rand's Executive Vice President, testified that PEMEX provided "a very open-ended spec . . . we referred to it as kind of a black box. It allowed the fabricator to do what it needed to have a—more of a functional performance." Such evidence could reasonably support a conclusion that the contract's scope of work focused primarily on Kiewit meeting PEMEX's performance expectations, rather than the specific design of the modules. Even so, this does not preclude a conclusion that Kiewit was required to submit a change order to Dresser-Rand before altering the number of decks per module. Because we conclude that the contract is ambiguous in this respect, we examine extrinsic evidence to determine the parties' intention. *See Haden,* 266 S.W.3d at 450–51.

Considering all relevant evidence in the summary judgment record,[5] we conclude that the district court was correct to hold that no reasonable jury

---

[5] The bulk of Dresser-Rand's summary judgment evidence consists of documents referencing changes to Excel's scope of work. We agree with the district court that "'Scope of Work' is a defined term with a particular meaning" within each contract. Excel's subcontract with Kiewit contained a distinct "scope of work" provision with a proposal for basic and detailed engineering and design, including a multi-page list of specific design deliverables. The subcontract also broadly required "an approved change order" for "[a]ny and all changes to th[e] Agreement." Thus, changes to Excel's detailed engineering and design proposal, as outlined in the subcontract, were not necessarily indicative of changes to the scope of work

could find that Kiewit's design and construction of the modules constituted a change in the contract's scope of work, and Kiewit was entitled to summary judgment. *See Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 384 (5th Cir. 1990) (recognizing that summary judgment is appropriate if extrinsic evidence of the parties' intent does not present a genuine issue of material fact); *see also United States v. Tracts 31a, Lots 31 & 32*, 852 F.3d 385, 390 n.5 (5th Cir. 2017) (citing *Jhaver* for the same proposition). Extrinsic evidence supports Kiewit's argument that the increased costs in Invoices DR-04b, 05, and 06 reflected design changes within the original scope of work. Simpson testified that the original scope of the project was "two compression modules" and "the scope of supply didn't change." He also stated that what Dresser-Rand balked at was not a scope change, but rather the number of hours Kiewit took to complete the modules:

> Effectively, we contracted to build two modules. You know, we had two modules that were built. It wasn't like there was extra compression—compression put in and extra scrubbers and extra lube oil consoles. The scope did not materially change, but yet engineering spent three times more money engineering the module than what they were contracted to do in the beginning. . . . The item—the issue is not with the scope of what they produced. The issue is with the amount of hours and what they charged to produce it. That's the issue that we have.

Significantly, Kenneth DeVito, Dresser-Rand's Project Manager, testified that Kiewit was *not* required to submit change orders for increased costs, quantities, or manhours incurred during Kiewit's performance of the original scope of work. Thus, the record demonstrates that Dresser-Rand understood Kiewit's scope of work to comprise building two compression modules that

---

set forth in Appendix E. Dresser-Rand's assertion that "a scope change for Excel has to be a scope change for Kiewit" is "conclusory," "unsubstantiated," and thus insufficient to defeat summary judgment. *See Rushing*, 185 F.3d at 513; *Little*, 37 F.3d at 1075.

complied with the general performance requirements specified in the contract. The increased costs above the contract's target estimate for building the modules, which resulted from Kiewit's evolving design process, thus did not require Kiewit to request a change order under Article 303.[6] Though Dresser-Rand undoubtedly came to owe Kiewit more than it expected it would, we agree with the district court that Dresser-Rand assumed the risk of the increased costs reflected in the invoices by failing to include a limiting, "not-to-exceed" price in the contract.

Dresser-Rand's most compelling evidence that there was a scope change—the language in Appendix E referring to a two-deck module—is "merely colorable" and "is not significantly probative," in light of the parties' intent that Kiewit should have broad design discretion. *See Anderson,* 477 U.S. at 249–50. Because Dresser-Rand has failed to raise a genuine issue of material fact that the costs reflected in the invoices were for work outside of the contract's original scope of work, Kiewit was entitled to summary judgment.

## B

Dresser-Rand next contends that Article 701 of Appendix A to the contract required Kiewit to receive advanced authorization from Dresser-Rand as a condition precedent to repayment for all reimbursable rates-driven scope work. Under Texas law, a condition precedent requires that an event occur or be performed before a right accrues and can be enforced. *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992). Whether a condition exists, rather than a covenant or promise, must be gathered from the contract as a whole and

---

[6] By contrast, the parties executed a change order when Dresser-Rand asked Kiewit to provide engineering analysis related to PEMEX's decision to use a different lift-rigging system for setting the modules than originally planned. Because analysis for the new lift-rigging system fell outside of Kiewit's original scope of work under the contract, a change order was necessary.

from the intent of the parties. *Citizens Nat'l Bank v. Tex. & Pac. Ry. Co.*, 150 S.W.2d 1003 (Tex. 1941). Conditions precedent are normally created through use of language such as "if," "provided that," "on condition that," or other similar conditional phrases. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). While the inclusion of such language is not necessary, its absence is probative of an intent to make a promise, rather than impose a condition, and the terms will be construed as a covenant to prevent unfairness from nonpayment for completed work. *Id.* Courts avoid finding a condition precedent where another reasonable reading of the contract is possible, where the intent of the parties is doubtful, or where a condition would impose an absurd or impossible result. *Schwarz-Jordan, Inc. v. Delisle Constr.*, 569 S.W.2d 878, 881 (Tex. 1978); *Hohenberg Bros. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). Texas courts do not favor conditions due to "their harshness in operation." *Sirtex Oil Indus. v. Erigan*, 403 S.W.2d 784, 787 (Tex. 1966).

In Dresser-Rand and Kiewit's contract, Article 701, Note (v) to Appendix A states:

> Amounts for work compensated by Reimbursable Rates are factored into the milestone payments and shall be spread throughout multiple milestones. Reimbursable Rates-driven scope will be supported by weekly time sheets/time sheet summaries, each authorized in advance by Company and confirmed as accepted for payment by signature of a duly authorized Company representative.

The plain language of Article 701, Note (v) uses imperatives such as "shall" and "will" instead of the conditional language traditionally associated with the creation of conditions precedent, suggesting that the parties intended to make a promise. *See Criswell*, 792 S.W.2d at 948. Moreover, the contract as a whole appears to support this interpretation; other provisions of the contract employ explicitly conditional language, suggesting that Dresser-Rand knew how to

No. 17-20438

create a condition precedent and chose not to do so in Article 701. Accordingly, we construe Article 701 as a covenant and not a condition precedent. *See Schwarz-Jordan, Inc.*, 569 S.W.2d at 881. Doing so is in line with Texas courts' aversion to finding conditions precedent and avoids an unfair result here, as Kiewit completed the work reflected in the invoices and Dresser-Rand accepted it. *See Sirtex Oil Indus.*, 403 S.W.2d at 787; *Criswell*, 792 S.W.2d at 948.

## C

Finally, Dresser-Rand contends, for the first time on appeal, that Kiewit submitted insufficient, conclusory summaries of the work reflected in Invoices DR-04b, 05, and 06, preventing the district court from verifying the total amount of damages Kiewit claimed. Dresser-Rand failed to raise this argument below, and we therefore decline to consider it here.[7] *See Vogel v. Veneman*, 276 F.3d 729, 733 (5th Cir. 2002) ("Except in cases of extraordinary circumstances, we do not consider issues raised for the first time on appeal.") (internal quotations and citations omitted); *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) ("Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it.") (internal quotations and citations omitted).

**\*\*\***

For these reasons, we AFFIRM the district court's judgment.

---

[7] The district court noted that it was undisputed that the invoices accurately reflected actual costs incurred by Kiewit for work performed and accepted by Dresser-Rand.