**DELISLE CONSTRUCTION CO., Appellant,**

v.

**SCHWARZ–JORDAN, INC., OF HOUSTON, Appellee.**

No. 8030.

Court of Civil Appeals of Texas.

Jan. 26, 1978.

Rehearing Denied Feb. 16, 1978.

B. J. Hooks, Houston, for appellant.

Melvin Engel, Dale A. Dossey, Houston, for appellee.

CLAYTON, Justice.

This is a suit for damages for breach of contract and in the alternative for recovery based on the contract provisions. Schwarz-Jordan, Inc. of Houston, a subcontractor, as

plaintiff sued Delisle Construction Co., a contractor, for monies expended in performing certain work under its subcontract and for loss of profits on such subcontract. In the alternative, plaintiff sued for damages for an amount computed under the terms of the contract documents.

Trial was to the court, which found that defendant breached the contract with plaintiff and awarded damages in the amount of $10,684.19 in monies expended and $12,000 for loss of profits on the contract.

It is undisputed that defendant entered into a construction contract, hereinafter referred to as the "prime contract," with the City of Houston to remodel concourse and flight station interiors at Houston Intercontinental Airport. Defendant subsequently entered into a standard subcontract agreement under which plaintiff was to perform the installation of the linear metal ceiling required by the prime contract with the city.

The subcontract between defendant and plaintiff provided that the prime contract between the city and defendant became a part of the subcontract, including the general conditions of the contract, supplementary general conditions, and the drawings and specifications and addenda forming a part of the contract.

The contract documents contain the following provisions relating to the installation of the metal ceiling:

"*Mock-up*: Contractor shall install suspension members for curved section and 10 feet of straight section in one concourse and install the pans. *Upon approval of the installation work may proceed per schedule.*" * * *

"Whenever the words 'approved,' 'satisfactory,' . . . or similar words or phrases are used, it shall be assumed that the word 'Engineer' follows the verb as the object of the clause, such as '*approved by the Engineer.*'" * * *

"*The Engineer may direct that alterations, deviations, additions or omissions be made to or from the work as indicated or required.*" (Emphasis added) * * *

"15. *Changes and Extra Work*—Within the general scope and sort of work or construction covered by the contract, the Engineer may, without notice to the surety on the Contractor's bond, make such changes in the design, materials or machinery or the plans for installation or construction or other quality or character of the work or materials required as he may find necessary to the accomplishment of the general purpose of the work or construction contracted for. . . ."

A "mock-up," which was merely a sample of the work and materials used in the work to be performed by plaintiff, consisting of 200 square feet on specially fabricated materials was installed by plaintiff. It is undisputed that shortly after the "mock-up" was completed, the city through no fault of the defendant, notified the defendant they were eliminating the metal ceilings which were the subject of plaintiff's subcontract with defendant.

The airport engineer testified that the "mock-up" was required in order "to determine if it was going to work satisfactorily from a cost-mechanic standpoint, from a practical standpoint before we went ahead and used this type of ceiling throughout the concourses." He disapproved the "mock-up" because the ceiling was not acceptable from a general appearance standpoint and because it was not heavy enough and strong enough to withstand the wear and tear to which it would be subjected. He also testified provisions were made so "we weren't married to it until we had a chance to look at a mock-up and see what it was going to do." A design change was then made to eliminate the linear metal ceiling. The "mock-up" was then removed by plaintiff.

The trial court found that a valid contract existed between the parties, that defendant breached such contract, and that plaintiff was entitled to recover damages for such breach.

We will first consider defendant's second point of error which urges error on the part of the trial court in finding that defendant breached the subcontract with plaintiff since the contract documents contained a

condition precedent requiring plaintiff to install a "mock-up" and obtain the approval of the airport engineer prior to proceeding with the work, and this approval was never obtained. We sustain this point for the reasons to be stated.

■ The question before us is whether or not the requirement of the approval of the "mock-up" by the airport engineer was a condition precedent, a condition which must occur before there is a right to immediate performance and before there is a breach of contractual duty. Plaintiff does not question the right of the airport engineer to eliminate the work of installing the linear metal ceiling. It is undisputed that the engineer refused to approve the "mock-up."

In the recent case of *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976), the court stated the rules applicable to conditions precedent.

"A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. Conditions may, therefore, relate either to the formation of contracts or to liability under them. *Perry v. Little,* 377 S.W.2d 765 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.); *Reinert v. Lawson,* 113 S.W.2d 293 (Tex.Civ.App.—Waco 1938, no writ). Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty. *Burns v. American Nat. Ins. Co.,* 280 S.W. 762 (Tex.Comm'n App.1926, jdgmt. adopted); *Perry v. Little,* supra; *Cozby v. Edwards,* 203 S.W.2d 569 (Tex.Civ.App.—Fort Worth 1974 [1947], writ ref'd n. r. e.); *Toland v. Kaliff,* 435 S.W.2d 260 (Tex.Civ.App.—San Antonio 1968, no writ); Restatement of Contracts § 250 (1932)."

The facts clearly show that the installation and approval of the "mock-up" was required by the prime contract. The provisions of the contract are clear that the approval of the work must be obtained before the contractor could proceed with the installation of the linear metal ceiling. This approval by the engineer was a condition which necessarily had to occur before any contractual duty or obligation existed on the part of either the plaintiff or defendant. To give this clause in the contract any other construction would render the "approval" requirement absolutely meaningless. Not only is the contract clear and unambiguous on this point, but the engineer and the plaintiff apparently recognized this to be the true meaning of the "approval" clause. It is clear such meaning was given by the engineer which is evident from his testimony quoted above. The plaintiff's witness, who was the president of plaintiff corporation, testified about the difficulty in making arrangements for the materials used in the ceiling work, and "it was because of my expertise and that of my people working with our supplier . . . that we were able to prepare a bid and perform the job *if they decided to go ahead with it.*" (Emphasis added)

■ The facts of this case fall squarely within the rules stated by the Supreme Court in the *Hohenberg Bros.* case. We hold that the approval of the airport engineer was required before the defendant (and the plaintiff under its subcontract) were required or permitted to perform under the contract, before there was a right to immediate performance, and before there could be a breach of contractual duty on the part of the defendant. The approval of the "mock-up" was a condition precedent and in the absence of such approval, there is no liability or obligation on defendant's part, and there can be no breach of contract by him.

All of the appellee's counterpoints presupposes the existence of a valid and enforceable contract between the parties. In view of our disposition of this question, such counterpoints are without merit.

The plaintiff having sought recovery of damages based solely upon breach of contract, and on no other grounds, and there being no breach of contract for which plaintiff can recover damages, we now render

the judgment which should have been rendered by the trial court: that plaintiff recover nothing from defendant.

REVERSED and RENDERED.