SCHWARZ–JORDAN, INC. OF HOUSTON, Petitioner,

v.

DELISLE CONSTRUCTION CO., Respondent.

No. B–7486.

Supreme Court of Texas.

July 19, 1978.

---

Melvin M. Engel, Dale A. Dossey, Houston, for petitioner.

Richard B. Davies, B. J. Hooks, Houston, for respondent.

POPE, Justice.

This is a breach of contract action. Schwarz-Jordan, Incorporated, sued Delisle Construction Company for failure to pay monies due under a written subcontracting agreement. In a non-jury trial, the trial court rendered judgment for plaintiff Schwarz-Jordan. The court of civil appeals reversed and rendered judgment that Schwarz-Jordan take nothing. 561 S.W.2d 619. We reverse the judgment of the court of civil appeals and remand the cause to that court.

Delisle Construction Company had contracted with the City of Houston to remodel the concourse and flight station interiors at Houston Intercontinental Airport. Delisle subcontracted the installation of a new type of metal ceiling to Schwarz-Jordan under a standard subcontracting agreement. The subcontract incorporated the provisions of the prime contract by reference. Since the metal ceiling concept was new, both the prime contract and the subcontract required the construction of a model (mock-up) and its approval by the city engineer before further work on the metal ceiling could proceed.

Schwarz-Jordan constructed the mock-up at the airport. The city engineer then disapproved the mock-up and eliminated the metal ceiling from the construction plans. The basis for the engineer's disapproval was the concept itself and not that Schwarz-Jordan's work was unsatisfactory. The City of Houston paid the prime contractor, Delisle, an amount undisclosed by the record for the preparation, installation and removal of the mock-up at the airport. Delisle paid Schwarz-Jordan nothing for its work on the project, and Schwarz-Jordan brought this suit for breach of contract.

The court of civil appeals interpreted the portion of the mock-up provision emphasized below, as it was incorporated into the subcontracting agreement, as a condition precedent to *any* liability on the subcontracting agreement:

*Mock-up*: Contractor shall install suspension members for curved section and 10 feet of straight section in one concourse

and install the pans. *Upon approval of the installation work may proceed per schedule.*

The prime contract provided (emphasis added):

*Mock-up* : Contractor *shall install* suspension members for curved section and 10 feet of straight section in one concourse and install the pans. *Upon approval of the installation work may proceed per schedule.*

\* \* \* \* \* \*

Whenever the words "approved," "satisfactory," . . . or similar words or phrases are used, it shall be assumed that the word "Engineer" follows the verb as the object of the clause, such as *"approved by the Engineer."*

\* \* \* \* \* \*

*The Engineer may direct that alterations, deviations, additions or omissions be made to or from the work as indicated or required.*

\* \* \* \* \* \*

15. *Changes and Extra Work*—Within the general scope and sort of work or construction covered by the contract, the Engineer may, without notice to the surety on the Contractor's bond, make such changes in the design, materials or machinery or the plans for installation or construction or other quality of character of the work or materials required as he may find necessary to the accomplishment of the general purpose of the work or construction contracted for. . . . If any change so ordered results in an increase or decrease of cost to the Contractor an addition to or deduction from the contract price on account thereof shall be computed by the Engineer as provided in Section 16 of this specification. . . .

16. *Compensation for Extra Work; Allowance or Deduction on Account of Changes*—Extra work ordered in writing by the Engineer as provided in Section 15 of this specification shall be paid for on the basis of the Engineer's computation of the aggregate of labor, material, truck hire and equipment rental entering into the performance thereof as follows: . .

Deduction from or addition to the contract price for any lump sum bid item on account of a change order, ordered as provided in Section 15 of this specification, shall be computed by the Engineer as follows:

\* \* \* \* \* \*

An allowance shall be made in favor of the Contractor for the work done under such change order, computed in the same manner hereinabove provided for the computation of compensation for extra work. The Engineer shall then determine, based on the Contractor's breakdown between labor and material, equipment rent and other direct cost items, the cost to the Contractor if he were to have done the work omitted under the change order. To the sum so determined, the Engineer shall add 15 percent to cover the estimated overhead and profit to have been made by the Contractor on the omitted work. The Engineer will then determine the difference between the allowance so computed for the additional work done under the change order and deduction so computed on account of the work omitted under the change order, and the difference so determined shall be either added to or deducted from the lump sum bid, as the case may be.

\* \* \* \* \* \*

The subcontracting agreement's Article X provided, in part:

ARTICLE X

In addition to the foregoing provisions the parties also agree: That the Subcontractor shall: . . .

(1) Be bound to the Contractor on the terms of the Contractor Documents and this Agreement, and assume toward the Contractor all the obligations and responsibilities that the Contractor, by those documents, assumes toward the Owner, as applicable to this Subcontract. . .

(13) Make any and all changes or deviations from the original plans and specifications without nullifying the original contract when specifically ordered to do so in writing by the Contractor. The Subcontractor prior to the commencement of this revised work, shall submit promptly to the Contractor written copies of the cost or credit proposal for such revised work in a manner consistent with the Contract Documents.

\*　　\*　　\*　　\*　　\*　　\*

That the Contractor shall—

(19) Be bound to the Subcontractor by all the obligations that the Owner assumes to the Contractor under the Contract Documents and by all the provisions thereof affording remedies and redress to the Contractor from the Owner insofar as applicable to this Subcontract.

\*　　\*　　\*　　\*　　\*　　\*

We do not agree with the holding that the mock-up provision of the contract was a condition precedent to defendant's obligation. The clear language of the contract directs the contractor and subcontractor to build a mock-up. The engineer's approval was not, however, a condition precedent to the obligation to build a mock-up. It was at most a condition precedent to the obligation to complete the entire linear metal ceiling.

■ Terms such as "if," "provided that," or "on condition that," usually indicate an intent that the provision be a condition precedent rather than a promise; however, they or similar expressions are not necessary and whether a contractual provision is a condition rather than a promise is determined from the whole instrument. *Hohenberg Brothers Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1 (Tex.1976); *Hanson Southwest Corp. v. Dal-Mac Construction Co.,* 554 S.W.2d 712, 720 (Tex.Civ.App.— Dallas 1977, writ ref'd n. r. e.); 17 Am. Jur.2d *Contracts* § 321, at 752 (1964). The words used in the prime contract and the subcontracting agreement (*"shall install* suspension members . . .. Upon approval, . . . work may *proceed* per

schedule") [Emphasis added] are not those usually associated with a condition precedent.

The contractor was paid by the City pursuant to the same provision for the work done by the subcontractor. Sections 15 and 16 of the main contract, coupled with Article X, subdivisions (13) and (19) of the subcontracting agreement, provide on their face for partial payments to the subcontractor when its work is omitted because of some change in the building plans. The contract as a whole not only permits an interpretation of the disputed provision as other than a condition precedent; it strongly indicates the provision is a promise subject to subsequent modification *after* partial performance by building the mock-up. The terms provide for payment for that partial performance.

■ It is a rule of construction that a forfeiture by finding a condition precedent is to be avoided when possible under another reasonable reading of the contract. *See Hohenberg Brothers Co. v. George E. Gibbons & Co., supra; Henshaw v. Texas Natural Resources Foundation,* 147 Tex. 436, 216 S.W.2d 566, 570 (1949); 17 Am.Jur.2d *Contracts* § 321, at 752 (1964). Applying that rule, we hold that the "mock-up" provision of the contract is not a condition precedent to any liability.

■ We have examined Delisle Construction Company's brief in the court of civil appeals for other meritorious points to sustain the judgment of the intermediate court. The only point which would entitle Delisle to rendition of judgment that Schwarz-Jordan take nothing is its point that there is no evidence to support the trial court's award of damages. Mr. Schwarz, the president of Schwarz-Jordan, testified that his corporation spent $10,684.19 to build the mock-up, and that the expenditures were reasonable and necessary. He demonstrated by calculations based on that expenditure figure that the liquidated damages provision of the contract provided for more than the $12,000 lost profits actually awarded him. Based on current materials, labor and engineering costs, of which

Schwarz had knowledge, he testified that the profit on the whole job would be $25,-000. There is evidence to support the trial court's award.

Delisle had points before the court of civil appeals asserting that the trial court's findings about the costs incurred by Schwarz-Jordan in building the mock-up and its loss of profits were not supported by factually sufficient evidence and were against the great weight and preponderance of the evidence. We must remand this cause to the court of civil appeals to pass on those points over which it has the exclusive jurisdiction. *McKelvy v. Barber,* 381 S.W.2d 59 (Tex. 1964).

The judgment of the court of civil appeals is reversed, and this cause is remanded to the court of civil appeals.