# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00036-CV

---

**Yong Yu and Chao Qun Restaurant Group, LLC, Appellants**

**v.**

**Chao-Qun Lu, Appellee**

---

### FROM THE 455TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-006966, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Yong Yu (Yu) and Chao Qun Restaurant Group, LLC (the Company) challenge the trial court's order denying their motion to compel arbitration of their respective claims against Chao-Qun Lu (Lu) arising from disputes related to loans to, ownership interests in, and management of the Company. *See* Tex. Civ. Prac. & Rem. Code §§ 51.014(a) (listing appealable interlocutory orders), 171.098(a)(1) (allowing interlocutory appeals from orders denying motions to compel arbitration). For the following reasons, we reverse the order denying the motion to compel arbitration and remand for further proceedings consistent with this opinion.

## BACKGROUND

Prior to the events giving rise to this lawsuit, Lu was the managing member of the Company, which owns commercial real estate (the Property) on North Lamar Boulevard in Austin and rents out space in the Property to commercial tenants, including a restaurant owned

and operated by Chang Le Restaurant, LLC (the Restaurant). When the Company encountered financial difficulties and was at risk of foreclosure by its lenders, it solicited assistance from Yu, who agreed to lend funds to the Company pursuant to a promissory note. The note recited that upon Yu's satisfactorily completing "his due diligence" in connection with the Company's business, the parties would enter into a "subscription agreement" or similar instrument whereby he would acquire 65% of the Company's membership interests. Within two months of Lu's execution of the promissory note on behalf of the Company, the parties executed several other agreements, including the following two relevant to this appeal: (1) a "Membership Purchase Agreement" (Purchase Agreement), by which Yu agreed to purchase from Lu a 65% interest in the Company, and (2) a "First Amended and Restated Operating Agreement of . . . [the Company]" (Operating Agreement), both executed May 14, 2021.

After disputes arose among the parties to this appeal and third parties about debt obligations, lease payments, ownership of the Company, and whether Yu paid the consideration required by the Purchase Agreement—including whether any of his loan funds converted into ownership interests in the Company—Yu and the Company filed the underlying lawsuit. In the live petition, Yu made claims against Lu for fraud, fraudulent inducement, and negligent misrepresentation and sought a declaratory judgment that he owns a 65% interest in the Company and is its sole manager. The Company made claims against Lu for breach of fiduciary duty and of the Operating Agreement.[1] Appellants' live petition included requests for a temporary restraining order and injunction to enjoin defendants' conduct that might interfere with the Company's operations.

---

[1] The Company made claims against the two other individuals and the Restaurant, but we need not recite those details because they are not relevant to the issues on appeal.

About a week after filing their lawsuit, appellants filed a motion to compel mediation and arbitration as to their claims against Lu only. In their motion, they contended that the Operating Agreement contains a binding agreement to arbitrate "all disputes of any kind between the parties, arising out of or relating in any way to the" Operating Agreement. Appellants alleged in their motion that Yu and Lu executed "numerous documents assigning Yu 65% of the Membership Interests of [the Company]" and that Lu "accept[ed] the significant benefits of consideration paid by Yu" and "specifically acknowledge[ed] 'the receipt and sufficiency' of Yu's consideration." Nonetheless, appellants alleged, six months after execution of the Operating Agreement and related Purchase Agreement, Lu "sent demand disputing Yu's ownership" in the Company.

On December 22, 2021, the trial court conducted a hearing on appellants' motion. Yu testified and the trial court admitted into evidence copies of the Purchase Agreement, the Operating Agreement, and correspondence from Lu's attorney to Yu's attorney stating that Yu had breached the Purchase Agreement by failing to pay the consideration outlined therein. Following the hearing, the trial court signed an order denying appellants' motion to compel mediation and arbitration without stating its reasons. This interlocutory appeal followed.

## DISCUSSION

A party seeking to compel arbitration must prove the existence of a valid agreement to arbitrate and that the disputed claims are within the scope of that agreement. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 519 (Tex. 2015). We resolve these questions by applying "common principles of general contract law to determine the parties' intent." *Id.* at 520 n.15; *see also Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021)

3

("Arbitration agreements are on equal footing with other contracts and must be enforced according to their terms."). After a court determines that a valid agreement to arbitrate exists, it should resolve any doubts as to an agreement's scope in favor of arbitration. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). If a party proves that the disputed claims are within the scope of a valid agreement to arbitrate, the burden shifts to the opposing party to set up an affirmative defense to arbitration. *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397–98 (Tex. 2020).

We review the denial of a motion to compel arbitration for an abuse of discretion, reviewing legal questions de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). The validity and scope of an arbitration agreement are legal questions that we review de novo. *Wagner*, 627 S.W.3d at 283.

Appellants contend that the trial court abused its discretion in denying their motion to compel arbitration because, although the Purchase Agreement does not contain an arbitration provision, the Operating Agreement does, and the two agreements constitute "one entire agreement." Therefore, appellants' argument continues, the arbitration provision in the Operating Agreement applies to all their claims asserted against Lu, which fall within the provision's scope. We agree.

Pursuant to the Purchase Agreement, which Yu signed as "Purchaser" and Lu signed as "Seller," Lu agreed to sell and assign to Yu a 65% membership interest in the Company for $400,000. "[U]pon such sale and assignment pursuant to an Assignment of Membership Interests in the form of Exhibit A attached hereto," Yu would "become the Manager and a Member holding the Majority Membership Interest [65%] in the Company set forth" in Schedule A of the Operating Agreement. In Article VII, the Purchase Agreement provides,

4

> *This Agreement, including* the exhibits, schedules hereto, and *the Operating Agreement, embody the entire agreement and understanding of the parties* hereto in respect of the subject matter hereof and supersede all prior agreements, representations, warranties, and understandings between or among the parties, whether written or oral, with respect to such subject matter.

(Emphases added.)  Article VII also provides that each party

> irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement or for the recognition and enforcement of any judgment in respect hereof brought by the other party or its successors or assigns shall be brought in the courts of the State of Texas, County of Travis, or . . . the United States District Court for the Western District of Texas.

As for the Operating Agreement, Lu and Yu each signed it in their respective capacities as members, and Yu additionally signed it in his capacity as the Company's manager: "The undersigned hereby assents to his election as manager of the" Company.  The Operating Agreement incorporates by reference a "Schedule A," which identifies Yu and Lu as the Company's only members with, respectively, 65% and 35% ownership interests.  Of particular relevance to this appeal, in Article X the Operating Agreement provides,

> The Manager(s), Members, and any other party affected hereby, agree to negotiate in good faith in an effort to informally resolve any dispute arising out of or related to this Agreement that may arise between the Manager(s), Members, and any other party affected hereby.  If the dispute cannot be resolved by informal negotiation, the parties agree to proceed to mediation in Austin, Travis County.  If the dispute cannot be resolved by mediation within thirty (30) [sic] after such dispute is mediated, *the parties agree that all disputes of any kind between the parties, arising out of or relating in any way to the Agreement shall then be subject to BINDING ARBITRATION* pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("AAA").

(Emphasis added.)

5

In construing contracts, we consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Also, when, as here, separate instruments are executed contemporaneously by the same parties, for the same purposes, and as part of the same transaction, we construe them together. *See Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 900 (Tex. App.—Austin 2006, no pet.). When one of such agreements that is "essential" to the overall transaction contains an arbitration provision but the other agreement does not, we will presume that the parties intended the arbitration provision to reach all aspects of the transaction unless there is a "contrary expression of intent." *See id.* at 901 (quoting *Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 395 (5th Cir. 2002)). Here, not only do the subject matters recited in the Purchase Agreement and Operating Agreement reveal that they are part of the same overall transaction, but the Purchase Agreement expressly states that it and the Operating Agreement, together, constitute the "entire agreement." Furthermore, the Operating Agreement—governing relations among the Company's members and the Company's operations—is essential to the overall transaction the parties structured to facilitate Yu becoming the majority owner and sole manager of the Company through his purchase of such ownership interest.

While Lu points to the provision in Article VII of the Purchase Agreement requiring "any legal action or proceeding arising out of or relating to this Agreement or for the recognition and enforcement of any judgment in respect hereof" to be brought in the courts of Travis County or the Western District of Texas, such provision can be harmonized with the broad arbitration provision in the Operating Agreement by construing it to mean that it applies only in the event of a non-arbitrable dispute that must be litigated in court or, for instance, a

6

party's attempt to enforce an arbitration award. *See Kirby*, 183 S.W.3d at 901 (concluding similarly where one agreement as part of overall transaction contained similar forum provision and another agreement contained similar arbitration provision). Also, notably, the Article VII provision in the Purchase Agreement refers to "any *legal action or proceeding* arising out of or relating" to the agreement whereas the arbitration provision in the Operating Agreement refers to "all *disputes* arising out of or relating in any way" to the agreement. "Disputes" is a broader and more all-encompassing term than the specific term "legal action," supporting the conclusion that the parties intended that all disputes related to the agreements be resolved via arbitration while only non-arbitrable legal actions be brought in the specified courts. *Cf. Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 439 (Tex. 2017) ("When a forum-selection clause encompasses all 'disputes' 'arising out of' the agreement, instead of 'claims,' its scope is necessarily broader than claims based solely on rights originating exclusively from the contract."). We, accordingly, conclude that there is a valid agreement requiring the parties to arbitrate "all disputes arising out of or relating in any way to" the Purchase Agreement and Operating Agreement.

Lu counters that as part of their burden to prove the existence of a valid arbitration agreement, appellants had the burden of proving that "all conditions precedent" to the Operating Agreement's "taking effect" had occurred but that appellants did not—and could not—so prove because the evidence conclusively established that Yu had not paid the consideration as required by the closing provision in the Purchase Agreement.[2] Lu relies on the following provision in Article 2.1 of the Purchase Agreement to support his argument that Yu's

---

[2] We take no position on whether the evidence conclusively established Yu's payment of consideration or failure of such payment, as we are able to resolve the issues on appeal on the basis of legal determinations.

payment of the $400,000 consideration was a condition precedent to the Operating Agreement's becoming effective:

> After giving effect to the sale and purchase under Section 2.1 and the completion of the Closing, Purchaser shall be a Member in the Company pursuant to the terms of the Operating Agreement, holding the Percentage Interest in the Company as set forth opposite its name in Schedule A of the Operating Agreement.

We disagree with Lu's contention that Yu's alleged "failure of consideration" required by the Purchase Agreement rendered the Operating Agreement (and, necessarily, its arbitration provision) invalid and unenforceable.

First, "failure of consideration" is distinct from "lack of consideration." The former is a defense to a party's prevailing on a cause of action brought under a contract, but—unlike the latter—it does not render a contract unenforceable or invalid. *See, e.g.*, Tex. R. Civ. P. 94 (listing failure of consideration as affirmative defense); *Walden v. Affiliated Comput. Servs., Inc.*, 97 S.W.3d 303, 320–21 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("A complete failure of consideration constitutes a defense to an action for breach of contract."); *cf. S.C. Maxwell Fam. P'ship Ltd. v. Kent*, 472 S.W.3d 341, 344–45 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("[C]onsideration is a necessary requirement for the formation of a contract. If there is no consideration—that is, no mutuality of obligation—then there is no contract."). In contrast to lack of consideration, which "occurs when the contract, at its inception, does not impose obligations on both parties," a failure of consideration "occurs when, because of some supervening cause arising after the contract is formed, the promised performance fails." *Doskocil Mfg. Co. v. Sang Nguyen*, No. 02-16-00382-CV, 2017 WL 2806322, at *6–7 (Tex. App.—Fort Worth June 29, 2017, no pet.) (mem. op.). Both the

8

Purchase Agreement and Operating Agreement are supported by consideration, i.e., mutuality of obligation, in that the former contains mutual promises by the parties to respectively buy and sell the membership interests and the latter contains mutual promises between the parties (as members of the Company) regarding their conduct and duties to the Company (such as each making specified capital contributions). Thus, even if Yu did not pay the consideration required by the Purchase Agreement or make the capital contribution required by the Operating Agreement—which are material fact issues we need not reach in this appeal—such non-payment does not render the agreement invalid.[3]

Secondly, while the common law recognizes that there can be conditions precedent to contract formation, *see Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 143–44 (Tex. App.—Dallas 2012, no pet.), we conclude that Yu's payment of the $400,000 required by the Purchase Agreement is not a condition precedent to the formation of the Operating Agreement. Because of their "harshness in operation, conditions are not favorites of the law," and in construing a contract, courts avoid finding forfeiture by condition precedent if another reasonable reading of the contract is possible. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990); *Great W. Drilling, Ltd. v. Pathfinder Oil & Gas., Inc.*, No. 11-14-00206-CV, 2020 WL 373096, at *8 (Tex. App.—Eastland Jan. 23, 2020, pet. dism'd) (mem. op.). "If the language of the contract is susceptible to a non-condition precedent interpretation, we accept that construction and construe the language as a mere covenant." *Great W. Drilling*, 2020 WL 373096, at *8. Furthermore, contract terms that use conditional language such as "if," "provided that," "on condition that," or similar conditional phrases reflect the

---

[3] Additionally, even if Lu were lodging a true complaint about lack of consideration, such defect would go to the validity of the agreement as a whole and would have to be decided by an arbitrator, not the court. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 647–48 (Tex. 2009).

parties' intent to create a condition precedent, whereas the absence of such language is at least some indication that a provision should be construed as a covenant rather than a condition. *See Criswell*, 792 S.W.2d at 948; *Schwarz-Jordan, Inc. v. Delisle Constr. Co.*, 569 S.W.2d 878, 881 (Tex. 1978) (concluding that terms "shall" and "upon approval" were "not those usually associated with a condition precedent"); *see also Chalker Energy Partners, III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 673–74 (Tex. 2020) (noting that whether agreement creates conditions precedent to formation may be decided as matter of law when terms are unambiguous, and holding that provision stating parties have no "legal obligation of any kind" "unless and until" certain events have occurred creates condition precedent).

The Article 2.1 contract provision on which Lu relies—providing that "[a]fter giving effect to the sale and purchase under Section 2.1 and the completion of the Closing, Purchaser shall be a Member . . . pursuant to . . . the Operating Agreement"—does not contain any terms such as "provided that" or "if" that customarily indicate the parties intended to create a condition. Furthermore, Article 2.1 does not condition the formation of the Operating Agreement on Yu's paying consideration at closing but merely recites that after such performance he will be a member *pursuant to* the Operating Agreement. The effectiveness of the Operating Agreement is not made expressly contingent upon Yu making payment (or upon any other event); rather, the effectiveness of the Operating Agreement is impliedly concurrent with the immediate effectiveness of the Purchase Agreement, by virtue of the provision providing that both agreements comprise the parties' "entire agreement." It also bears noting that Article IV of the Operating Agreement provides a remedy for any member's "fail[ure] to contribute the full amount of his or her 'Initial Capital Commitment'": the "deficiency will be considered a debt" for which the Company "shall have the right to take legal action against the

10

defaulting Member to recover on such debt."[4] The fact that the Operating Agreement provides a remedy for Yu's alleged failure to pay his capital commitment or capital contribution of, presumably, the $400,000 referenced in the Purchase Agreement lends further support to our conclusion that payment thereof is not a condition precedent to formation of the Operating Agreement.

As to whether the claims at issue fall within the scope of the arbitration provision, we conclude that they do. The claims at issue constitute the following: (1) Yu's request for a declaratory judgment that he owns 65% of the Company, (2) Yu's fraud claims stemming from Lu's alleged misrepresentation of the Company's debts and resulting inducement of Yu to lend funds to the Company and convert the promissory note into the Purchase Agreement, and (3) the Company's claims against Lu for breach of fiduciary duty and of the Operating Agreement arising from his alleged attempt to sell the Property through a brokerage agreement. The Operating Agreement's arbitration clause is broad, embracing "all disputes of any kind between the parties, arising out of or *relating in any way to* the Agreement" (emphasis added), terminology that this Court has held to be "extremely broad" and "capable of expansive reach." *See Kirby*, 183 S.W.3d at 898 (quoting *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067–68 (5th Cir. 1998)). Such "related to" language, in contrast to narrower phrases like "arising out of," extends to "all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute" or that "touch" on

---

[4] The Operating Agreement defines "Initial Capital Commitment" as "the amount the Member *agrees to contribute* for his or her Membership Interest" and the related term "Initial Capital Contribution" as "the amount the member *has contributed* for his or her Membership Interest as of the Effective Date." (Emphases added.) It notes that the amount of each is listed next to the members' names on the attached Schedule A. Next to Yu's name on Schedule A, the amount of $400,000 is identified as his "Capital Contribution," but there is no "Capital Commitment" listed.

11

matters covered by the contract containing the arbitration provision. *Id.* (quoting *Pennzoil*, 139 F.3d at 1067–68). Given our determination that both the Purchase Agreement and the Operating Agreement, viewed as one agreement, constitute the contract at issue, it necessarily follows that the parties' disputes about the percentage of Yu's ownership interest in the Company, if any; Lu's alleged breach of contractual or fiduciary duties as a member of the Company; and Lu's alleged misrepresentations with the intent to induce Yu into loans and conversion thereof into an ownership interest in the Company are matters that "touch" on and have a significant relationship to the agreement. This is especially so given our mandate to resolve any doubts as to an agreement's scope in favor of arbitration. *See In re Poly-America*, 262 S.W.3d at 348. We, accordingly, hold that the claims at issue are subject to the arbitration provision, and the trial court should have granted appellants' motion to compel mediation and arbitration.

## CONCLUSION

Having concluded that the trial court should have granted appellants' motion to compel mediation and arbitration, we reverse the order and remand this cause for further proceedings consistent with this opinion. *See* Tex. Civ. Prac. & Rem. Code § 171.021; Tex. R. App. P. 43.2(d).

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Reversed and Remanded

Filed: June 8, 2022

12