# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00391-CV

---

**My Place Services LLC; Hatem M. Merhi; Fauneil Smith; Big Ben MIT; and Big Bend MIT, Appellants**

**v.**

**Newman & Company MSO, LLC, Appellee**

---

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-001032,
### THE HONORABLE AMY CLARK MEACHUM JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Newman & Company MSO, LLC ("Newman") sued My Place Services LLC (MPS); Hatem M. Merhi; Fauneil Smith; Big Ben MIT (Big Ben); and Big Bend MIT (Big Bend) asserting causes of action for breach of contract (against MPS, Big Ben, and Big Bend) and violations of the Deceptive Trade Practices-Consumer Protection Act (DTPA) (against all appellants). *See* Tex. Bus. & Com. Code §§ 17.41-.63. The dispute arose out of a construction services contract between Newman and MPS. After a bench trial, the court rendered judgment against MPS and Merhi, jointly and severally, on the breach of contract and DTPA claims and ordered them to pay Newman $150,000 in actual damages, ordered that the damage award be trebled, and ordered them to pay Newman $84,700 in attorneys' fees. *See id.* § 17.50(b)(1) (providing for award of not more than three times amount of economic damages if

trier of fact finds that conduct of defendant was committed knowingly); Tex. Civ. Prac. & Rem. Code § 38.001(b)(8) (providing for recovery of reasonable attorneys' fees if claim is for breach of oral or written contract). The court also awarded pre- and post-judgment interest and conditional appellate attorneys' fees.[1] We will affirm.

## BACKGROUND[2]

Newman contacted MPS to discuss a construction buildout of commercial space at 3801 South Congress in Austin, Texas, that was to be a new location for its medical spa business. Merhi met with Newman to define the scope of the proposed project, conducted a walk-through of the premises, and familiarized himself with the conditions surrounding construction of the proposed project. MPS and Merhi represented to Newman that they had the skills and competence to complete the work on the proposed project in a good and workmanlike manner and in the time frame Newman requested. MPS and Merhi drafted a contract (the Contract) and presented it to Newman, who signed it in October 2021. Newman relied on MPS's and Merhi's representations when signing the Contract. The Contract provided for MPS to receive compensation for performing timely and professional work and included other obligations pertaining to the project specifications. The parties agreed that time was of the essence in performing the Contract because Newman would not be able to generate any revenue at the new location until the agreed upon buildout was completed.

---

[1] The judgment recited that "[n]o damages are awarded against the remaining Defendants," which are Fauneil Smith, Big Ben, and Big Bend.

[2] The background facts provided are derived from the trial court's unchallenged findings of fact.

2

Even though Newman timely made all payments required by the Contract, MPS's work on the project was untimely, incomplete, and failed to meet the standards required by the Contract and as promised in MPS's and Merhi's representations to Newman. MPS and Merhi also demanded additional payments from Newman before their due dates and refused to perform or complete the agreed upon work if Newman did not pay their extra-contractual demands. MPS only partially performed the work required under the Contract and failed to deliver and complete the services identified in the Contract in the time and manner provided therein. The trial court found that MPS and Merhi made false promises without intending to perform them as well as false and deceptive representations regarding the time and manner in which they could complete the project. After MPS and Merhi failed to perform, Newman terminated the Contract and engaged a different company, Principal Renovations, to repair and replace the noncompliant work performed by MPS and to complete the project as set forth in the terms of the Contract.

When Newman terminated the Contract, it had paid MPS and Merhi $125,000. Newman paid Principal Renovations $156,698.12 to complete the project. The delay in completing the project caused a disruption of the timing of the new location's opening, which rendered Newman's marketing ineffective and prevented Newman from building a customer base at the new location. Newman incurred $84,700.00 in attorneys' fees pursuing its claims against MPS and Merhi.

MPS and Merhi had previously engaged in a similar course of conduct and failure to deliver work promised on an unrelated project. The trial court found that MPS's and Merhi's conduct was not unique to Newman's project and was knowing and intentional and that MPS and Merhi knew they would not complete the project in accordance with the contract's terms and

3

planned in advance to demand money not due under the contract. The trial court also found that MPS and Merhi were aware that their conduct was unfair and unconscionable.

In March 2022, Newman filed its petition asserting causes of action for breach of contract and DTPA violations against MPS and Merhi. The trial court held a two-day bench trial in May 2023, after which it rendered judgment in Newman's favor, awarding it actual damages of $125,000, which it trebled, along with attorneys' fees and pre- and post-judgment interest. The trial court filed findings of fact and conclusions of law supporting its judgment, and MPS and Merhi perfected this appeal.

**DISCUSSION**

In their first issue, MPS and Merhi assert that "Newman failed to meet its evidentiary burden of proof on any claim against MPS or Merhi." In support of this assertion, MPS and Merhi contend that Newman's evidence consisted primarily of "testimony of interested witnesses," each of whom would "financially benefit from providing negative testimony against MPS and Merhi." As legal support for their assertion that testimony from these "interested witnesses" who stood to "financially benefit" from their testimony was insufficient to support Newman's breach of contract and DTPA claims, MPS and Merhi cite *Aerotek, Inc. v. Boyd*, in which the Texas Supreme Court observed that "[t]estimony by an interested witness may establish a fact *as a matter of law* only if the testimony could be readily contradicted if untrue, and is clear, direct and positive, and there are not circumstances tending to discredit or impeach it." 624 S.W.3d 199, 207 (Tex. 2021) (6emphasis added) (citing *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989)). But "civil cases typically apply the preponderance-of-the-evidence standard, that is, a fact-finder's determination that the plaintiff's

4

version of events is more likely than not true." *See In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding). Newman was not required at trial to provide evidence that established the elements of his claims *as a matter of law*, as he would have in a summary judgment proceeding. Here, Newman's testimony, as well as that of the other witnesses presented at trial, was subject to evaluation by the trial court, the trier of fact in a bench trial, which determined the credibility of the witnesses and the weight to be given their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819-21 (Tex. 2005). It was the trial court's role, as factfinder, to decide whether to believe all or any part of the testimony and to resolve any inconsistencies in that testimony. *Id.* If any testimony was conflicting, we defer to the trial court as the trier of fact. *Id.* MPS's and Merhi's complaint about the testimony provided by the plaintiff's witnesses in this context is misplaced, and we overrule their first issue.

In their second issue, MPS and Merhi argue that Newman failed to provide accurate plans and to complete the permitting necessary to enable MPS to perform its contractual obligation to complete the project set forth in the Contract. According to MPS and Merhi, these were conditions precedent to the contract, and Newman's failure to satisfy them prevent it from prevailing on its breach of contract claim.[3] MPS and Merhi raise this argument for the first time on appeal. MPS and Merhi never pleaded or argued that Newman had failed to perform any conditions precedent, did not raise the issue during trial or in any post-trial motions, and did not include a request for findings related to this issue in their general request for findings of fact and

---

[3] MPS and Merhi's brief also includes a list of other alleged deficiencies that they contend are conditions precedent to the contract including providing free access to the worksite, notifying MPS of alleged defects or incomplete work, and failing to provide MPS an opportunity to cure. Other than listing these as conditions precedent, MPS and Merhi provide no argument supporting their claim that these alleged shortcomings constitute conditions precedent that Newman was required to perform in order to recover on its breach of contract claim.

5

conclusions of law. Assuming this argument has been preserved, obtaining a building permit was not a condition precedent affecting MPS's obligation to perform the Contract. A condition precedent is "an act or event that must occur after the making of a contract before a right to immediate performance arises." *Beard Family P'ship v. Commercial Indem. Ins.*, 116 S.W.3d 839, 844 (Tex. App.—Austin 2003, no pet.). To determine whether a condition precedent exists, we ascertain the intent of the parties by looking at the entire contract. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). Generally, words such as "if," "provided that," "on condition that," or other conditional language indicate that the parties intended the act or event to be a condition precedent. *Id.* "While there is no requirement that such phrases be utilized, their absence is probative of the parties' intention that a promise be made, rather than a condition imposed." *Id.* (citing *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976)). In construing a contract, finding a condition precedent to liability is to be avoided when another reasonable reading of the contract is possible. *Schwarz-Jordan, Inc. v. Delisle Constr. Co.*, 569 S.W.2d 878 (Tex. 1978); *see also Sirtex Oil Indus., Inc. v. Erigan*, 403 S.W.2d 784, 787 (Tex. 1966) (observing that, "because of their harshness in operation, conditions are not favorites of the law"). When the intent of the parties is doubtful, the agreement "will be interpreted as creating a covenant rather than a condition." *Criswell*, 792 S.W.2d at 948.6

In the present case, the Contract states that "[Newman] shall obtain necessary building permits." The Contract contains no conditional language related to the building permit or other indication that it was an "act that must occur" before a "right to immediate performance" of the Contract arose. *See Beard Family P'ship*, 116 S.W.3d at 844. This obligation on Newman's part does not constitute a condition precedent to MPS's performance under the

6

Contract. There was evidence presented at trial that Newman worked with an architectural design company to obtain a building permit and was informed by the City of Austin that a building permit for the site was already "open" and Newman needed only to change the name of the general contractor. However, Newman was unable to do so because MPS was not a contractor registered with the City of Austin. Later, Newman had no issue with changing the name of the general contractor on the permit to Principal Renovations, the company it hired to complete the project after terminating the Contract.

Providing "accurate" plans for the project was likewise not a condition precedent. Rather, the Contract provided that "[Newman] will make available to [MPS] all plans, specifications, drawing, blueprints, and similar construction documents necessary for [MPS] to provide the Services described herein." The Contract contains no conditional language indicating the parties' intent that this obligation by Newman constituted a condition precedent to the Contract. There was evidence at trial that Newman provided building plans to MPS and Merhi by email and brought the plans to the initial walk-through of the building site. There was evidence that Newman provided MPS and Merhi with an x-ray of the concrete slab. While MPS and Merhi argue on appeal that these plans were insufficient, there was evidence at trial that Principal Renovations used these same plans to correct MPS's deficient performance and complete the project. There was evidence at trial that Newman fully performed the obligation to provide plans as contemplated by the Contract. We overrule MPS and Merhi's second issue.

In their third issue, MPS and Merhi argue that the Contract was void for illegality. *See Lon Smith & Assocs. v. Key*, 527 S.W.3d 605, 617 (Tex. App.—Fort Worth 2017, pet. denied) ("Courts will not enforce an illegal contract, particularly when the contract involves the doing of an act prohibited by statutes that were enacted for the protection of the public health and

7

welfare."). MPS and Merhi assert that they "could not legally complete [the Contract] without a building permit in place." Illegality is an affirmative defense that must be pleaded. Tex. R. Civ. P. 94 ("In pleading to a preceding pleading, a party shall set forth affirmatively [] illegality . . . ."). Failure to plead the affirmative defense of illegality constitutes waiver. *See Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 176 n.6 (Tex. 1980) (holding that illegality defense was waived by party's failure to affirmatively plead it (citing Tex. R. Civ. P. 94)). MPS and Merhi did not plead illegality as an affirmative defense to Newman's claims. Nor did they raise this complaint in the trial court or otherwise preserve the argument. *See* Tex. R. App. P. 33.1. And even if preserved, this complaint lacks merit. "A contract that could have been performed in a legal manner will not be declared void because it may have been performed in an illegal manner." *Philadelphia Indem. Ins. v. White*, 490 S.W.3d 468, 483 (Tex. 2016). A building permit could have been, and was, obtained for this project once Newman terminated the contract with MPS and secured a general contractor registered with the City of Austin. MPS and Merhi do not explain why MPS could not itself have registered with the City of Austin such that a permit could be issued with MPS as the general contractor. The project could have been, and apparently was, performed in a legal manner with regard to City of Austin building permitting. Moreover, to avoid a contract based on illegality, MPS and Merhi would have been required to return the money Newman paid them, which they did not do. *See Mandril v. Kasishke*, 620 S.W.2d 238, 247 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.) ("[A] party to an illegal contract [will] not be permitted to avail himself of its illegality until he restores the other party all that had been received from him on such illegal contract . . . ."). We overrule MPS and Merhi's third issue.

In their fourth issue, MPS and Merhi argue that the Contract was unenforceable because of the absence of material terms. MPS and Merhi point to Merhi's trial testimony in which he stated that "MPS refused to sign the Written Contract because MPS had concerns about the true scope of work and viability of the completion date." The trial court found, however, that MPS and Merhi drafted the Contract and presented it to Newman for signature. And testimony that Merhi had "concerns" about the scope of work and the "viability" of the completion date belies the assertion on appeal that those material terms were absent from the Contract. To the extent MPS and Merhi contend that the contract is unenforceable because MPS did not sign it, a contract need not be signed to be effective "unless the parties explicitly require signatures as a condition of mutual assent." *See Mid-Continent Cas. v. Global Enercom Mgmt.*, 323 S.W.3d 151, 157 (Tex. 2010) ("Further, Texas law recognizes that a contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual assent."). In *Mid-Continent*, the Texas Supreme Court found contract formation when one party sent a contract to a counter-party without signing it, the counter-party signed the contract, performance on the contract commenced, and the parties operated in a manner consistent with the existence of a contract. *Id.* Here MPS and Merhi sent a contract to Newman, Newman signed it, and MPS and Merhi began performing the contract, albeit in a manner deemed deficient by Newman. This evidence of mutual assent is sufficient to support the formation of the Contract. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009) (noting that mutual assent can be inferred from circumstances). We overrule MPS and Merhi's fourth issue.

In their fifth issue, MPS and Merhi argue that they cannot be liable for violations of the DTPA because "the record does not demonstrate misrepresentations or unconscionable conduct given that MPS continued to work in good faith on the project and remained ready,

9

willing, and able to complete the project in compliance with Austin building codes, until Newman terminated the contract and hired a replacement contractor." MPS and Merhi do not challenge any of the trial court's individual findings of fact related to their conduct that the trial court found violated the DTPA. Moreover, there was evidence presented at trial to support the elements of a DTPA cause of action, which here are that MPS and Merhi (1) engaged in an unconscionable action or course of action; and (2) represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities they do not have, and represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve. *See* Tex. Bus. & Com. Code §17.46(a)(3), (b)(5), (12). Evidence that MPS and Merhi assured Newman that they had the skills and competence to complete the project in a good and workmanlike manner included their statements to Newman that they regularly performed commercial construction work and, after walking the site, stated that they were "ready to go." Evidence that MPS and Merhi engaged in an unconscionable course of conduct included that (1) despite Newman having paid MPS and Merhi all the amounts due under the contract, MPS and Merhi demanded additional money and refused to complete the agreed-upon work if Newman did not make payments not required by the Contract; (2) three weeks into the project Merhi told Newman that "he was already in the red for the Project" and demanded an additional payment of $9,000; (3) in January 2022, Newman was contacted by someone from MPS and Merhi's offices asking for final payment even though the project was not complete and threatening to stop working at the site if the final payment was not made; and (4) Merhi informed Newman that unless the final payment were made, he could not afford to pay employees to continue to work on the site, causing Newman to make the payment, but then directed crews to stop working when Newman retained counsel. Evidence that MPS and Merhi made false

10

promises without intending to perform as well as false and deceptive representations included that (1) MPS and Merhi made oral assurances to Newman that they could perform the work, but the company was understaffed, did not follow normal construction processes, and did not perform the work in compliance with the plans or the City codes; and (2) MPS and Merhi had previously been hired to build a house for a person who paid over $500,000 for work, repeatedly asked her for additional payments, never completed the house, abandoned the site when she demanded that MPS and Merhi remedy serious construction deficiencies, and thereafter called her accountant to request an additional $40,000 payment. In sum, the evidence presented at trial supports findings that MPS and Merhi made intentionally fraudulent representations to Newman about their abilities and the quality of their services and later demanded extra-contractual payments and abandoned the project, which was incomplete and did not conform to the plans or the City code requirements. We overrule MPS and Merhi's fifth issue.

In their sixth issue, MPS and Merhi assert that Newman failed to demonstrate that their acts were a producing cause of Newman's damages. The entire argument supporting this issue is the following paragraph:

> Merhi had limited communication with Newman because of his illness, and definitely had no communications to support a DTPA claim outside of the MPS contract. Merhi did not enter any relationship with Newman outside of the proposed Written Contract, and Merhi had limited involvement in communications for the arrangement between MPS and Newman.

This argument does not even address causation, much less support MPS and Merhi's contention that Newman failed to meet the burden of proof on this element of the claims. We overrule MPS and Merhi's sixth issue.

11

In their seventh issue, MPS and Merhi assert that Newman failed to meet the burden of proof required to hold Merhi individually liable for MPS's actions that violated the DTPA. The entire argument supporting this issue is the following paragraph:

> The Findings of Fact of [sic] Conclusions of Law, which the Trial Court requested Newman's counsel to draft for the Court's signature, erroneously reference a finding of individual liability against Hatem Merhi under the alter ego theory. At the conclusion of the Trial and in the Trial Court's Judgment issued May 25, 2023, the Court only referenced a finding of individual liability based upon the DTPA. (insert cite) [sic] Newman failed to meet its burden of proof to establish any misrepresentation made by Merhi to support individual liability under the DTPA. Even if the Trial Court's ruling of breach of contract is upheld against MPA, Texas precedent clearly instructs that a breach of contract does not give rise to DTPA liability without proof of additional elements. (cite as see generally) [sic] so even if the breach of contract claim is upheld against MPS, Newman must meet its burden of proof for piercing the corporate veil or alter ego to hold Merhi liable individually for MPS' individual liability.

The trial court made findings that Merhi used MPS as an alter ego and as a sham to perpetuate a fraud. More significantly, though, it was not necessary for the trial court to impose individual DTPA liability on Merhi through an alter ego theory. Instead, the trial court found Merhi individually liable under the DTPA for his own violations of the statute. "[T]he law is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation." *Odela Grp. v. Double-R Walnut Mgmt., LLC*, No 05-16-00206-CV, 2017 WL 1360209, at *6 (Tex. App.—Dallas Apr. 12, 2017, no pet.) (mem. op.). We overrule MPS and Merhi's seventh issue.

## CONCLUSION

Having overruled each of MPS and Merhi's appellate issues, we affirm the trial court's judgment.

12

_____

Chari L. Kelly, Justice

Before Justices Triana, Kelly, and Crump

Affirmed

Filed:   June 19, 2025